STATE of Tennessee, Appellee,

v.

**Emma Jean BILBREY, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Jan. 11, 1993.

Permission to Appeal Denied by Supreme Court July 12, 1993.

John E. Appman, Jamestown and Larry M. Warner, Crossville, for appellant.

Charles W. Burson, Atty. Gen. and John B. Nisbet, III, Asst. Atty. Gen., Nashville, William Edward Gibson, Dist. Atty. Gen. and David A. Patterson, Asst. Dist. Atty. Gen., Cookeville, for appellee.

## OPINION

BIRCH, Judge.

The Criminal Court of Cumberland County entered judgment upon a jury verdict convicting the defendant, Emma Jean Bilbrey, of first-degree murder[1] and aggravated robbery.[2] For these offenses, the trial court sentenced her to imprisonment for life and eight years, respectively.

Bilbrey appeals as a matter of right. She raises several issues for our determination:

1. Whether the trial judge[3] complied with Rule 25(a), Tenn.R.Crim.P.;

2. Whether the trial judge erred in excluding certain testimony;

3. Whether the trial judge erred in refusing to grant a continuance when defendant's counsel became physically unable to proceed;

4. Whether the trial judge erred in refusing to grant a new trial on the basis of "newly discovered evidence"; and

5. Whether the fact that three different judges conducted portions of this jury trial deprived the defendant of a fair trial.

We have painstakingly reviewed the record and carefully considered the issues raised. We find that the trial judge failed to comply with Rule 25(a), Tenn.R.Crim.P.; this failure constitutes reversible error.

### I

The record establishes that Bilbrey was angry with U.J. Bryant, the victim, because he abused his wife, Bilbrey's sister. Bilbrey planned to kill Bryant, and she enlisted David Harvey to help her. She telephoned Bryant and lured him to the crime scene by asking that he come help her start her car. When Bryant arrived, he was shot first by Harvey and then by Bilbrey. Bryant succumbed to the wounds they inflicted. Bilbrey then planned their unsuccessful efforts to escape capture and avoid prosecution.

### II

For the dispositive issue, the record discloses that Judge Robert H. Bradshaw, sitting by interchange, presided as the jury trial got underway. After presiding for jury selection and a full day's testimony, Judge Bradshaw became ill during a recess and was taken to the hospital.[4] Later the same day, Judge John A. Turnbull, the circuit court judge, informed the jury of Judge Bradshaw's inability to proceed. He adjourned the trial and sent the jury to their quarters for the evening.

The court convened the following morning with Judge Leon C. Burns, Jr., the

---

**1.** T.C.A. § 39–13–202 (1991).

**2.** T.C.A. § 39–13–402 (1991).

**3.** As three judges conducted proceedings in this cause, we use the term "trial judge" to refer to Judge Leon C. Burns.

**4.** Judge Bradshaw recovered.

regular criminal court judge for the circuit, presiding. Aware of the previous day's events, Judge Burns stated:

> I have reviewed the notes, as I say, the judge made on the witnesses who have testified. At this point, I'm electing to proceed without listening to the tapes of the testimony, but will try to listen to those as we can during the day at various breaks.

> .    .    .    .    .
>
> .    .    .    .    .

> MR. WARNER: If it please the Court, with respect to the record, would you just note our exception on behalf of the defendant regarding Rule 25(A) with your completion of the case? I won't belabor the point.

Even though the defendant objected, Judge Burns nevertheless proceeded to conduct the trial, beginning at the point in the proof where Judge Bradshaw had recessed the previous day.

To supplement the record, the defendant attached the following affidavit of the court reporter to her motion for new trial:

> That I have had exclusive possession, control and custody of cassette audio tapes of said trial, and same have not been heard by anyone other than myself.

On appeal, the defendant insists that Judge Burns failed to fulfill the requirements of Rule 25(a), Tenn.R.Crim.P., and was not justified in substituting for the original trial judge.

Rule 25(a) provides:

> If by reason of death, sickness or other disability the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge regularly sitting in or who may be assigned to the court, upon certifying that he has familiarized himself with the record of the trial, may proceed with and finish the trial.

The forcefulness with which this issue was framed and advanced at the new trial hearing provided Judge Burns with the opportunity, if not the mandate, to state for the record any additional steps he may have taken to familiarize himself with the record. Judge Burns did not so state. We therefore conclude that his familiarization process went no further than he had initially stated: that is, he reviewed Judge Bradshaw's notes "made on the witnesses who have testified."

We have found no Tennessee case which has construed Rule 25(a). However, since our Rule 25(a) is a carbon copy of the Federal Rules of Criminal Procedure 25(a), we first consider how the rule has been construed in federal courts.

Federal courts have consistently held that failure to comply strictly with Rule 25(a) does not mandate reversal absent prejudice to the defendant. *See United States v. Lane,* 708 F.2d 1394 (9th Cir. 1983); *United States v. Santos,* 588 F.2d 1300 (9th Cir.1979); *United States v. Boswell,* 565 F.2d 1338 (5th Cir.1978). However, each of these cases concerned a substitution which occurred after all of the evidence had been heard, and for that reason alone, we think the instant case is distinguishable.

In *United States v. Bowser,* the Fourth Circuit stated that

> [w]here there are questions of fact as to degree and extent of culpability in participating in the substantive crime, it would seem essential that the sentencing judge should await preparation of the transcript and review it before imposing sentence.

*United States v. Bowser,* 497 F.2d 1017 (4th Cir.1974) (fn 2a). Clearly, if the legal qualification of a substituting judge at sentencing rests upon such a degree of familiarity with the record, so much more so does that of a replacement judge presiding at trial where the facts are being developed.

Holdings of other state courts bring the issue into sharper focus. For example, substitution of a judge at any stage of a criminal trial is impermissible in some states absent the consent of the defendant. *See State v. Davis,* 564 S.W.2d 876 (Mo. 1978); *Bailey v. State,* 397 N.E.2d 1024 (Ind.Ct.App.1979). Another state court has held that, notwithstanding compliance with

its equivalent of Rule 25(a), substitution should be denied if the defendant's right to a fair trial is substantially prejudiced. *See State v. Misner*, 410 N.W.2d 216 (Iowa 1987). Finally, at least one court has held that a substitute judge may perform "ministerial exercises" without being familiar with the record. This case, however, did not address the question of the substitute judge whose role in the trial was more extensive. *People v. Lewis*, 71 A.D.2d 7, 422 N.Y.S.2d 380 (N.Y.App.Div.1979).

Accordingly, it is our opinion and we hold that Judge Burns did not "familiarize" himself with the record of the trial to the extent required by Rule 25(a). Accordingly, he should not have proceeded with the trial. Substituting for Judge Bradshaw, under the circumstances here present, constituted error.

■ The defendant insists that the error was harmful inasmuch as the trial judge lacked sufficient knowledge about the case to act as the thirteenth juror. We agree with this insistence.

■ Although Bilbrey's trial occurred before the date on which Rule 33(f)[5] became effective, we conclude that the thirteenth juror rule applies in the sense that the trial judge was empowered to reject the verdict had he deemed that appropriate. *State v. Enochs*, 823 S.W.2d 539 (Tenn. 1991).

■ The state contends that this error was harmless because the defendant failed to demonstrate harm or prejudice resulting therefrom, citing *Santos*, 588 F.2d at 1300. In *Santos*, a substitute judge replaced the original trial judge without having first strictly complied with Rule 25(a), Fed. R.Crim.P. The court found this failure constituted harmless error. This case is, as we mentioned earlier, distinguishable from the case under review and has no application. In *Santos*, the substitution occurred after the jury had begun deliberations. In contrast, in the case under re-

view the trial had not proceeded beyond the state's case-in-chief—quite a difference.

We cannot classify the error as harmless. For unless the substitute judge listens to or reads all the testimony introduced prior to assuming responsibility for the conduct of the trial, and unless he examines all of the existing exhibits as well, the substitute judge would have, at best, a profoundly fragile basis upon which to evaluate the evidence under Rule 33(f).

Accordingly, we reverse the judgment of the trial court and remand the cause for a new trial.

We have examined the other appellate issues raised by the defendant. Those not waived are without reversible error.

SCOTT, P.J., concurs.

TIPTON, J., concurs and files opinion in which, SCOTT, P.J., joins.

TIPTON, Judge, concurring.

I wholly concur in the majority opinion, but I am compelled to add further explanation for the result. Although the trial occurred approximately one month before Tenn.R.Crim.P. 33(f) (the thirteenth juror rule) became effective, the defendant's motion for new trial was filed and the hearing thereon was held after its effective date. The motion raised the issue of the substitute judge's (trial judge's) inability to exercise his function as the thirteenth juror. Under these circumstances, *State v. Enochs*, 823 S.W.2d 539 (Tenn.1991) indicates that the rule would apply in this case. In applying the thirteenth juror rule, the trial judge was to weigh the evidence, including the assessment of witness credibility. *See Curran v. State*, 157 Tenn. 7, 4 S.W.2d 957, 958 (1928); *State v. Johnson*, 692 S.W.2d 412, 414 (Tenn.1985) (Drowota dissenting).

In this case, the primary witness for the state was David Harvey, who testified that the defendant was the leader in the plan to kill the deceased and that both he and she shot him. The defendant's proof was to

---

5. Rule 33(f) effective July 1, 1991, reinstates case law rule of thirteenth juror and states: "The trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence."

the effect that, although the defendant was present, Harvey acted alone in killing the deceased without the defendant's knowledge that the offenses were going to occur. Thus, Harvey was an accomplice under the state's theory and the sole perpetrator under the defendant's theory. Simply put, Harvey's credibility was crucial to the state's case. However, the trial judge was not presiding during any of the direct examination and the large majority of the cross-examination of Harvey.

The extent to which a substitute judge must familiarize him or herself with the record of the trial may depend upon the issue in question. As stated in *United States v. Larios,* 640 F.2d 938, 943 (9th Cir.1981), the amount of record review required "varies with the facts of each case, the more the case depends on the credibility, and especially the demeanor, of the witnesses, the more a judge needs to do to become adequately familiar with it."

Obviously, credibility involves more than demeanor in that it "apprehends the overall evaluation of testimony in the light of its rationality or internal consistency and the manner in which it hangs together with other evidence." *Carbo v. United States,* 314 F.2d 718, 749 (9th Cir.1963). As *Carbo* reflects, the other evidence which corroborates the contested witness may be of such a nature and strength that a substitute judge in reading the record may determine that the other convincing evidence places the state's case "safely beyond demeanor impeachment...." *Id.* at 750. In *Carbo,* the Ninth Circuit noted that the substitute judge spent three months studying the 7,500 pages of transcript and concluded that he was sufficiently familiar with the record to determine that the contested witnesses' demeanor was not an issue. *Id.* at 749–750. However, in this case, as the majority opinion notes, the record does not reflect that the trial judge sufficiently certified that he familiarized himself with the record nor does it reflect that he, in fact, had such familiarity so as to act appropriately as the thirteenth juror.

Also, as *Carbo* indicates, the less convincing the corroborating evidence the more important "demeanor appears to loom in making the necessary credibility determinations." 314 F.2d at 749. The corroborating evidence in this case falls far short of either excluding the legitimacy of the defendant's theory or fully accrediting Harvey's testimony in proving the state's theory. Thus, we cannot, through a review of the record, conclude that Harvey's demeanor on the witness stand was insignificant in assessing his credibility. Under the circumstances in this case, the trial judge could not properly approve the jury verdict, as is required, because of his inability to exercise his function as the thirteenth juror in weighing the evidence. It is for these reasons that a new trial is warranted. *See Curran v. State, supra.*